IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESLIE A. FREEMAN, | : | |
|     Plaintiff | : | No. 1:17-cv-01071 |
| | : | |
| v. | : | (Judge Kane) |
| | : | (Magistrate Judge Saporito) |
| | : | |
| NANCY A. BERRYHILL, | : | |
|     Defendant | : | |

**MEMORANDUM**

Before the Court are: the June 12, 2018 Report and Recommendation of Magistrate Judge Saporito (Doc. No. 10), recommending that the Court affirm the Acting Commissioner of Social Security ("Acting Commissioner")'s final decision denying Plaintiff Leslie A. Freeman ("Plaintiff")'s application for disability insurance benefits under Title II of the Social Security Act; Plaintiff's objections to the Report and Recommendation (Doc. Nos. 11, 12); and the Acting Commissioner's response to Plaintiff's objections (Doc. No. 13). For the reasons provided herein, the Court will adopt the Report and Recommendation in part and remand the case for further consideration of the evidence.

**I. BACKGROUND**

Plaintiff initiated the above-captioned action on June 19, 2017 by filing a complaint in which she appealed the decision of the Acting Commissioner to deny her application for disability insurance benefits under Title II of the Social Security Act.[1] (Doc. No. 1.) The action was referred to Magistrate Judge Saporito for preparation of a Report and Recommendation

---
[1] The Court notes that Plaintiff appealed the Acting Commissioner's original decision to deny her application for disability insurance benefits on August 18, 2015. See generally Freeman v. Colvin, No. 3:15-cv-1616, 2016 WL 1089222 (M.D. Pa. Mar. 21, 2016). The Honorable Richard P. Conaboy found that the ALJ erred in regard to his assessment of the opinions of Plaintiff's treating physicians and remanded the case to the Acting Commissioner for further development of the evidence. See id. at *10-12. The instant action pertains to the decision rendered upon remand.

pursuant to 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Magistrate Judge Saporito issued a Report and Recommendation on June 12, 2018 and recommended that this Court affirm the decision of the Acting Commissioner and deny Plaintiff's request for the award of benefits or for a new administrative hearing. (Doc. No. 10.) On June 26, 2018, Plaintiff filed objections to the Report and Recommendation (Doc. No. 11) and a brief in support thereof (Doc. No. 12). The Acting Commissioner filed a response to Plaintiff's objections on July 10, 2018.[2] (Doc. No. 13.)

### A. The Administrative Law Judge's Decision[3]

In his August 17, 2016 decision, the Administrative Law Judge ("ALJ") denied Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. (Doc. No. 6-9 at 15-29.) At step one of the governing five-step sequential analysis, the ALJ concluded that Plaintiff did not engage in substantial gainful activity from June 12, 2012 through June 30, 2015. (Id. at 17-18.) He further concluded that Plaintiff did engage in substantial gainful activity from July 1, 2015 through the date of his decision. (Id. at 18.) At step two, the ALJ concluded that Plaintiff had two severe medically determinable impairments: peripheral neuropathy and tarsal tunnel syndrome status post bilateral tarsal tunnel release surgery. (Id. at 18-21.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[2] The Court notes that the Acting Commissioner's response to Plaintiff's objections (Doc. No. 13) does not specifically address any of Plaintiff's objections but, rather, notes that Plaintiff's objections essentially reiterate the arguments made in Plaintiff's initial briefs and generally cites the Report and Recommendation and her initial brief as the bases of her opposition to Plaintiff's objections.

[3] The Court incorporates the factual account set forth in the background section of Magistrate Judge Saporito's Report and Recommendation. (Doc. No. 10 at 5-12.) To the extent that the Court references evidence not addressed in that portion of Magistrate Judge Saporito's Report and Recommendation, it cites the pertinent portion of the underlying record. (Doc. No. 6.)

Appendix 1.  (Id. at 21.)  The ALJ then assessed Plaintiff's residual function capacity ("RFC"), finding that she had the capacity to perform light work with the following limitations:

> [Plaintiff] is capable of standing and walking for fifteen (15) minutes at a time for up to four (4) hours[] total in an eight (8) hour day and occasional climbing of stairs, balancing, stooping, kneeling, crouching[,] and crawling, but never performing any foot control operations or climbing of ladders.  [Plaintiff] must avoid all exposure to hazards.

(Id. at 21-27.)  At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a child monitor or child day care center worker.  (Id. at 27.)  Finally, at step five, the ALJ found, upon consideration of Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant number in the national economy that Plaintiff can perform, such as information clerk, assembler of electrical accessories, and nongovernmental mail clerk.  (Id. at 28-29.)  Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act.  (Id. at 29.)

### B. Magistrate Judge Saporito's Report and Recommendation

In his Report and Recommendation, Magistrate Judge Saporito recommends that the Court affirm the Acting Commissioner's denial of Plaintiff's application for disability insurance benefits on the basis that substantial evidence supports the ALJ's determination that Plaintiff was not disabled as defined by the Social Security Act.  (Doc. No. 10.)  In arriving at this recommendation, Magistrate Judge Saporito addressed the eleven issues raised on appeal by Plaintiff.  (Id. at 22-49.)  First, Magistrate Judge Saporito concluded that the ALJ did not fail to comply with the remand order, which required the ALJ to "proper[ly] consider[] . . . probative evidence regarding [Plaintiff's] treatment for peripheral neuropathy and her treating physicians' assessments of associated symptoms/pain."  (Id. at 22-23.)  Magistrate Judge Saporito explained that although Plaintiff alleged that the ALJ "did not mention Judge Conaboy's [remand]

decision, did not address the specific reasons for remand, and did not further consider the treating physicians' assessments," there is no authority that requires the ALJ to refer to the remand decision specifically or address each reason for remand specifically. (Id.) Further, Magistrate Judge Saporito noted that the ALJ acknowledged the fact that the case was before him on remand in the "Jurisdiction and Procedural History" section of his decision. (Id. at 23.) Finally, Magistrate Judge Saporito disagreed with Plaintiff's contention that the ALJ did not further consider Plaintiff's treating physicians' assessments, concluding that the ALJ's decision, which discusses Plaintiff's symptoms and the treating physicians' medical opinions, indicates that he "further considered the evidence of the treatment and assessment of [Plaintiff's] neuropathy." (Id.)

Second, Magistrate Judge Saporito found that the ALJ's consideration of evidence from after the period of June 1, 2012 to June 30, 2015 did not contradict the remand order. (Id. at 24-25.) He concluded that no language in Judge Conaboy's remand order indicates that the ALJ was limited to considering evidence only from the period of June 1, 2012 to June 30, 2015. (Id. at 24.) Magistrate Judge Saporito further notes that if an ALJ finds that a plaintiff did not engage in substantial gainful activity for part of an alleged disability period, the ALJ is still required to base his decision on the evidence of record as a whole, including evidence from outside that identified period. (Id.) Magistrate Judge Saporito also disagreed with Plaintiff's argument that her condition after June 30, 2015 should be considered in the context of a review of whether she continued to be disabled, explaining that the applicable regulations apply only to individuals currently receiving disability benefits. (Id. at 25.)

Third, Magistrate Judge Saporito concluded that substantial evidence supports the ALJ's determination that Plaintiff engaged in substantial gainful activity from July 1, 2015 through the

4

date of the ALJ's decision. (Id. at 25-30.) Magistrate Judge Saporito noted that Plaintiff's situation is distinguishable from that of the plaintiff in Flowers v. Barnhart, 352 F. Supp. 2d 962 (D. Neb. 2004), because the plaintiff in Flowers, unlike Plaintiff, had argued to the ALJ that the work she did during her alleged period of disability was a trial work period. (Id. at 25-26.) Magistrate Judge Saporito also noted that evidence that Plaintiff engaged in substantial gainful activity for more than nine (9) months during her alleged trial work period further supports the ALJ's consideration of Plaintiff's activity during that period as evidence that she was not disabled. (Id. at 26-28.) Additionally, Magistrate Judge Saporito concluded that the ALJ adequately explained his conclusion that Plaintiff was partaking in substantial gainful activity despite special accommodations, citing her earnings in excess of the substantial gainful activity threshold, her lack of a sheltered relationship with her current employer, and the employer's testimony that Plaintiff is able to perform most of the duties her job requires. (Id. at 28-29.) Finally, Magistrate Judge Saporito found that the ALJ sufficiently evaluated whether Plaintiff's earnings exceed the reasonable value of the work she performed by noting Plaintiff's employer's testimony that he has no problem with the extra breaks she needs due to her substantial professional experience and good attitude. (Id. at 29-30.)

Fourth, Magistrate Judge Saporito determined that substantial evidence supported the ALJ's assignment of limited weight to the medical opinions of Drs. DeArmitt and Lupinacci, two of Plaintiff's treating physicians. (Id. at 30-33.) Magistrate Judge Saporito concluded that the fact that the opinions were reached before Plaintiff's symptoms improved due to her neural stimulator implant and the fact that the treatment notes indicate that Plaintiff had trouble ambulating only after a surgery or injury are sufficient bases for the ALJ's assignment of partial weight to the medical opinions of Drs. DeArmitt and Lupinacci. (Id. at 32-33.)

Fifth, Magistrate Judge Saporito found that although the ALJ erred in finding that Plaintiff could perform light work because no medical opinion states that she can handle the lifting requirement for light work, that error does not warrant remand because it is undisputed that Plaintiff's current position does not require any lifting. (Id. at 33-34.) Sixth, Magistrate Judge Saporito found that the ALJ's credibility determination as to Plaintiff was adequately explained and is supported by substantial evidence. (Id. at 34-37.) Magistrate Judge Saporito concluded that the ALJ's determination that Plaintiff's daily activities are inconsistent with her purported claims of disability, in consideration with Plaintiff's medical history, provided sufficient evidence and adequate explanation of the ALJ's credibility determination as to Plaintiff. (Id. at 35-37.)

Seventh, Magistrate Judge Saporito rejected Plaintiff's argument that the ALJ's hypothetical questions directed toward the vocational expert were defective. (Id. at 37-41.) Magistrate Judge Saporito noted that because the ALJ had previously rejected the opinions given by Drs. DeArmitt and Lupinacci, he properly declined to reference the findings of those opinions in his hypothetical questions for the vocational expert. (Id. at 38-39.) Furthermore, he rejected Plaintiff's argument that the ALJ erred by not explaining the medical basis for the RFC determination or the restrictions included in his hypothetical question posed to the vocational expert, finding that Plaintiff did not meet her burden of providing sufficient evidence for the ALJ to make a proper RFC assessment. (Id. at 39-41.) Eighth, Magistrate Judge Saporito concluded that the ALJ did not err in his step three determination. (Id. at 41-44.) He found that the ALJ's discussion of whether Plaintiff met the criteria for listing 11.14 for peripheral neuropathies, although brief, met the standard of meaningful judicial review, and specifically noted the ALJ's

discussion of Plaintiff's medical history and evidence relating to her ambulation, gait, and mobility. (Id. at 42-44.)

Ninth, Magistrate Judge Saporito found that the ALJ did not err in his evaluation of Plaintiff's mental health. (Id. at 44-47.) First, he rejected Plaintiff's contention that, pursuant to Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999), the ALJ erred in assessing Plaintiff's mental impairments because he did not complete a psychological review technique form and did not properly develop the record. (Id. at 44-45.) He concluded that Plummer does not require the ALJ to complete a psychological review technique form, but, rather, pursuant to 20 C.F.R. §404.1520a(c), the ALJ was obligated only "to make sure he include[d] his findings and conclusions concerning the plaintiff's functional limitations based on the medical evidence of record." (Id. at 45.) Magistrate Judge Saporito subsequently concluded that the ALJ's evaluation of Plaintiff's mental impairment, which took into account the evidence relating to Plaintiff's mental health and explained why he found her impairment to be mild, met this standard. (Id. at 45-47.) Tenth, Magistrate Judge Saporito rejected Plaintiff's argument that the ALJ erred in using the Medical-Vocational Guidelines to help structure his decision. (Id. at 47-48.) He noted that Plaintiff cited Williams v. Barnhart, 87 F. App'x 267 (3d Cir. 2004), in furtherance of her argument but failed to explain how that case is applicable to her claim. (Id. at 47.) Magistrate Judge Saporito declined to further address this assertion because Plaintiff failed to develop her argument. (Id. at 47-48.) Finally, Magistrate Judge Saporito concluded that the ALJ did not abuse his discretion when he denied Plaintiff's request for a continuance the day before the hearing. (Id. at 48-49.) He found that pursuant to 20 C.F.R. §416.1436, it was within the ALJ's discretion to grant or deny a request for changing the time and place of a hearing, and the ALJ was under no requirement to explain why he denied Plaintiff's request for a continuance.

7

(Id.) Magistrate Judge Saporito concluded that because Plaintiff's request for a continuance did not explain why the absence of the documents she was seeking would present a substantial impediment to her case, the ALJ did not abuse his discretion in denying the request. (Id. at 49.)

### C. Plaintiff's Objections to the Report and Recommendation

Plaintiff objects to the Report and Recommendation's conclusions as to eight of the eleven issues she raised on appeal. (Doc. Nos. 11, 12.) First, Plaintiff argues that Magistrate Judge Saporito erred in determining that the ALJ complied with Judge Conaboy's remand order. (Doc. No. 12 at 9-12.) Second, Plaintiff objects to Magistrate Judge Saporito's conclusion that the ALJ correctly determined that Plaintiff's employment qualified as trial work. (Id. at 13-15.) Third, Plaintiff argues that Magistrate Judge Saporito erred in concluding the ALJ properly considered the medical opinion evidence of Drs. DeArmitt and Lupinacci. (Id. at 15-17.) Fourth, she argues that Magistrate Judge Saporito erred in concluding that the ALJ's determination that Plaintiff had the RFC to perform light work was harmless error. (Id. at 18-19.) Fifth, Plaintiff objects to Magistrate Judge Saporito's conclusion that substantial evidence supported the ALJ's credibility assessment of Plaintiff. (Id. at 19-20.) Sixth, Plaintiff argues that Magistrate Judge Saporito erred in concluding that the hypothetical questions that the ALJ posed to the vocational expert were proper. (Id. at 20-24.) Seventh, Plaintiff objects to Magistrate Judge Saporito's conclusion that the ALJ properly determined that Plaintiff failed to meet listing number 11.14 for peripheral neuropathies. (Id. at 24-26.) Finally, Plaintiff argues that Magistrate Judge Saporito erred in determining that the ALJ did not abuse his discretion when he denied Plaintiff's request for a continuance. (Id. at 27-28.)

8

## II. LEGAL STANDARD

### A. Legal Standard Applicable to Review of the Acting Commissioner's Decision

When reviewing the Acting Commissioner's final decision denying a claimant's application for social security benefits, this Court's review is limited to determining whether the findings are supported by substantial evidence. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" See Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. See Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." See Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the [C]ourt must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether the claimant is disabled, but, rather, whether the Acting Commissioner's determination that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the

relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence." (alterations omitted) (quoting Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts 991 (2014))); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary).

### B. Legal Standard Applicable to the Sequential Evaluation Process

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. See 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and RFC. See id. Between steps three and four, the ALJ must assess a claimant's RFC, which is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (internal quotations marks omitted) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); see also 20 C.F.R. §§ 404.1520(e), 404.1545. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. See 20 C.F.R. §404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. See 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §404.1512; Mason, 994 F.2d at 1064. Once the claimant meets this burden, the burden shifts to the Acting Commissioner at step five to show that jobs that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC exist in significant number in the national economy. See 20 C.F.R. §404.1512(b)(3); Mason, 994 F.2d at 1064. In order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved, and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons why any evidence was rejected. See id. at 706-07. In addition, the ALJ must

indicate which evidence he or she "is relying on as the basis for his [or her] finding." See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Standard Applicable to this Court's Review of the Report and Recommendation

The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b) provide that any party may file written objections to a magistrate judge's proposed findings and recommendations. In deciding whether to accept, reject, or modify the Report and Recommendation, the Court is to make a de novo determination of those portions of the Report and Recommendation to which an objection is made. See 28 U.S.C. § 636(b)(1); M.D. Pa. L.R. 72.3.

## III. DISCUSSION

The Court concludes that Magistrate Judge Saporito thoroughly and correctly resolved the substance of Plaintiff's objection to the Report and Recommendation's finding that the ALJ did not abuse his discretion when he denied Plaintiff's request for a continuance in his Report and Recommendation. (Doc. No. 10 at 48-49.) Therefore, the Court will not write separately to address Plaintiff's objection and will adopt Magistrate Judge Saporito's Report and Recommendation as to that issue.

The Court next turns to Plaintiff's objection to Magistrate Judge Saporito's determination that the ALJ did not err in his assignment of partial weight to the medical opinions of Drs. DeArmitt and Lupinacci. Opinions of treating physicians "should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" See Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). Because "the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why

probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." See Basnett v. Comm'r of Soc. Sec., (quoting Cotter, 642 F.2d at 706-07) (internal quotation marks omitted). "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (citing Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983)).

Plaintiff objects to Magistrate Judge Saporito's determination that the ALJ did not err in assigning limited weight to the opinions of Drs. DeArmitt and Lupinnacci on several bases. (Doc. No. 12 at 15-17.) First, she argues that the ALJ's reliance on Plaintiff's improvements stemming from a neural stimulator implant in his assignment of partial weight to the opinion evidence is unfair. (Id. at 16.) She contends that her improved condition should be considered only in the context of a possible termination of benefits. (Id.) Plaintiff next argues that the ALJ's reasoning for the assignment of partial weight to the opinion of Drs. DeArmitt and Lupinnacci that she met listing 11.14—the lack of support from the treatment notes—is an insufficient basis for such a weight assignment. (Id. at 16-17.) She contends that by engaging in his own analysis of the medical records, the ALJ erred. (Id.) Plaintiff further argues that the ALJ had no foundation to conclude that the physicians' opinions conflicted with their treatment notes and based his determination on speculation as to the significance of certain details in the notes. (Id. at 17.) Plaintiff asserts that Magistrate Judge Saporito's analysis is flawed because in concluding that the ALJ did not err in his weight assignment, it relies on the fact that the

13

opinions were issued before the neural stimulator implant, a basis which Plaintiff argues fails to account for the applicability of the opinions to the pre-implant period. (Id.)

The Court concludes that the ALJ did not provide a sufficient basis for discounting and assigning only partial weight to the medical opinions of Drs. DeArmitt and Lupinacci. The ALJ's decision cites multiple bases for assigning limited weight to those medical opinions. The ALJ first notes that the opinions were rendered prior to Plaintiff's neural stimulator implant, which resulted in a substantial improvement to Plaintiff's condition. (Doc. No. 6-9 at 26-27.) While such improvement provides a sufficient basis to give the opinions of Drs. DeArmitt and Lupinacci limited weight as applied to the post-implant period, the Court concludes that the post-implant improvement has no apparent bearing on the weight assignment to these opinions in the context of the pre-implant period. However, the ALJ's decision fails to note any difference in the opinions' applicability to those two periods and seemingly cites the post-implant improvement as a basis to assign limited weight to the opinions of Drs. DeArmitt and Lupinacci in regard to the entirety of Plaintiff's purported period of disability. It is unclear whether the ALJ considered the applicability of this rationale in the context of the pre-implant period, which was at least twenty-three (23) months long.[4] Accordingly, the Court finds that the ALJ failed to provide a "clear and satisfactory explication" of this aspect of his rationale for assigning limited weight to the medical opinions of Drs. DeArmitt and Lupinacci. See Cotter, 642 F.2d at 704.

Next, the ALJ contends that Plaintiff's purported improvement in symptoms and return to work after she underwent the neural stimulator implant procedure contradicts the treating

---

[4] The record is unclear as to the exact date of Plaintiff's neural stimulator implant procedure. Plaintiff testified that the procedure occurred at some point in 2014 (Doc. No. 6-9 at 38, 39), and her medical records indicate that she had not undergone the procedure as of mid-May of 2014 (Doc. No. 6-8 at 26). Therefore, Plaintiff's alleged period of disability without the benefit of the neural stimulator implant lasted from June of 2012 through, at earliest, May of 2014.

physicians' statements that the identified limitations were permanent or indefinite. (Id. at 27.) The Court finds that this is not a sufficient reason to discount the medical opinions of Drs. DeArmitt and Lupinacci in the context of the entire alleged period of disability. As was the case with the ALJ's explanation of his first basis for assigning limited weight to Drs. DeArmitt's and Lupinacci's medical opinions, the ALJ does not sufficiently explain how this perceived contradiction applies to the ALJ's weight assignment in the context of the pre-implant period.[5] The Court also notes that Plaintiff's characterization of Drs. DeArmitt's and Lupinacci's opinions on the expected duration of Plaintiff's limitations as "statements that the limitations specified were permanent or indefinite with no anticipated end" is not completely accurate. The statements to which the ALJ refers are responses to the prompt, "Please state your opinion as to the expected duration of the limitations/restrictions." (Doc. Nos. 6-7 at 60, 6-8 at 5.) Thus, the physicians were stating their expectation of the duration of the limitations, at that point in time. Regardless of the characterization of the statements, the Court does not agree that the treatment providers' descriptions of the limitations as indefinite or permanent at the time of their evaluations is a reason to discount the opinions because the future intervention of a medical procedure happened to improve Plaintiffs' symptoms to some degree. The fact that the neural stimulator implant improved Plaintiff's limitations and restrictions at a later point in time does not necessarily contradict the physicians' prognoses of the of the expected duration of the limitations and restrictions at that point in time. An assumption otherwise is nothing more than a "speculative inference" on the basis of "lay opinion," which is an improper basis for rejecting the assessment of a treating physician. See Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at

---

[5] In fact, the ALJ failed to address whether he applied this reasoning to his weight assignment for the entire alleged period of disability or, rather, only in the context of the post-implant period. (Doc No. 6-9 at 27.) Thus, this aspect of the ALJ's weight assignment explanation is not supported by a "clear and satisfactory explication." See Cotter, 642 F.2d at 704.

15

429; Frankenfield, 861 F.2d at 408; Kent, 710 F.2d at 115). Accordingly, the Court concludes that this basis for the ALJ's assignment of limited weight to the treating physician's opinions is insufficient.

The ALJ also bases his partial weight assignment on the fact that the limitations that the opinions concluded Plaintiff has "are too extensive in light of the improvement in symptoms that the claimant realized with treatment, the claimant's failure to undergo acupuncture as recommended to address continued symptoms, the absence of any documented treatment after May 19, 2014, the claimant's reports of improvement in symptoms with us of a neural stimulator[,] and that she no longer takes medication." (Doc. No. 6-9 at 27.) The ALJ offers no explanation as to why Plaintiff's failure to undergo acupuncture treatment—a decision that the treatment notes indicate is based on Plaintiff's inability to pay for such treatment (Doc. No. 6-8 at 27, 29)—is logically connected to the conclusion that Drs. DeArmitt's and Lupinacci's opinions regarding Plaintiff's limitations are too extensive, and the Court fails to discern any such connection. The ALJ's other rationales for concluding that the treating physicians' stated limitations were too extensive apparently rely on the concept, similar to the rationale for the ALJ's second basis for assigning partial weight discounted by the Court supra, that the improvement of symptoms attributed to a future medical procedure renders pre-procedure limitations implausible. The ALJ fails to provide an explanation for this apparent assumption, and the Court concludes that such reasoning, without further explanation, is not a sufficient basis for a limited weight assignment because the ALJ has failed to support it with a "clear and satisfactory explication." See Cotter, 642 F.2d at 704.

Finally, the ALJ found that Drs. DeArmitt's and Lupinacci's treatment notes contradict their conclusions that Plaintiff suffers from persistent disorganization of motor function in two

16

extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. (Doc. No. 6-9 at 27.) The Court notes that the ALJ appears to cite this determination as the basis for his specific weight assignment to the physicians' conclusions that Plaintiff experiences persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station, as opposed to a basis for his general weight assignment to the physicians' opinions. The Court finds that even for the limited basis of the weight assignment to the conclusions of Drs. DeArmitt and Lupinacci that Plaintiff experiences persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station, the ALJ failed to provide a sufficient basis for his decision.

The ALJ's explanation of his assignment of limited weight to these opinions is brief, in that the ALJ cites two pieces of evidence to support his determination that the physicians' treatment notes contradict their conclusions. (Doc. No. 6-9 at 27.) The first item of evidence cited is the lack of any reference to Plaintiff's "use of an assistive device to ambulate aside from times when she was recovering from surgery." (Id.) The ALJ's underlying rationale appears to be that Plaintiff's failure to use an assistive device to ambulate throughout the alleged period of disability consistently is inconsistent with a determination that she experiences peripheral neuropathies with significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. The Court finds that such reasoning falls squarely into the camp of "speculative inferences," which are not proper bases for rejecting a treating physician's opinion. See Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429; Frankenfield, 861 F.2d at 408; Kent, 710 F.2d at 115); Nieves-Rivas v. Berryhill, No. 3:17-cv-868, 2018 WL 3023215, at *9 (M.D. Pa. June 18, 2018). Next,

17

the ALJ cites "the notes of treatment generally indicating that [Plaintiff] walks with a normal or intact gait without any assistive device or immobilization aside from references after surgeries, a note of April 13, 2012 that [Plaintiff] walked with some difficulty due to foot pain, a note on December 12, 2013 indicating that [Plaintiff] walked with an antalgic gait after hurting her back[,] and a note on December 17, 2013 indicating that [Plaintiff] walks with a cautious, independent gait." (Doc. No. 6-9 at 27.) Although the ALJ cites specific examples of treatment notes that appear to support the physicians' conclusions, he only generally asserts that other treatment notes indicate that Plaintiff walked with a normal gait and fails to address why those treatment notes are inconsistent with the physicians' conclusion that Plaintiff experiences persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. Accordingly, the explanation insufficiently addresses the purported contradictions contained in Drs. DeArmitt's and Lupinacci's treatment notes. See Nieves-Rivas, 2018 WL 3023215, at *8 ("[I]n the absence of any fully articulated evidentiary analysis we are left to speculate whether this opinion was rejected for no reason or the wrong reason."). Additionally, the ALJ appears to assume that a determination that Plaintiff experiences persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station is inconsistent with treatment notes from the alleged period of disability indicating that Plaintiff walked with a normal gait at specific points of time during that period. Without further explanation, the Court finds that this rationale is based on "speculative inferences," and therefore an insufficient basis to reject a treating physician's medical opinion. See Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429; Frankenfield, 861 F.2d at 408; Kent, 710 F.2d at 115).

For the aforementioned reasons, the Court concludes that the ALJ's decision to assign limited weight to the medical opinions of Drs. DeArmitt and Lupinacci is not supported by a complete or sufficient explanation and, thus, not supported by substantial evidence. See Dobrowlsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)). Accordingly, the Court will decline to adopt Magistrate Judge Saporito's Report and Recommendation as to the issue of the ALJ's assignment of weight to Drs. DeArmitt's and Lupinacci's medical opinions and remand the case for proper consideration of the weight assignment to those opinions. Consistent with the Court's discussion of the ALJ's decision supra, any subsequent weight assignment explanation that is even partially based upon Plaintiff's improvements realized after the neural stimulator implant should address separately the applicability, if any, of such reasoning to the pre-implant period and the post-implant period.

## IV. CONCLUSION

Based on the foregoing, the Court will overrule Plaintiff's objection as to the Report and Recommendation's finding that the ALJ did not abuse his discretion when he denied Plaintiff's motion for a continuance and adopt Magistrate Judge Saporito's Report and Recommendation as to that finding, sustain Plaintiff's objection as to the Report and Recommendation's finding that the ALJ did not err in his assignment of weight to the opinions of Drs. DeArmitt and Lupinacci, and remand the case to the Acting Commissioner for further consideration of the evidence consistent with this Memorandum.[6] An appropriate Order follows.

---

[6] This Court and other district courts in the Third Circuit have regularly declined to address outstanding arguments raised by plaintiffs in Social Security appeal cases upon finding a sufficient basis for remand, often because of the notion that remanding the case may produce different results that would render those arguments moot. See, e.g., Yates v. Berryhill, No. 3:15-cv-2398, 2017 WL 3470928, at *8 (M.D. Pa. Aug. 11, 2017) ("Because a sentence six remand is warranted, this Court declines to address the remaining allegations made by Plaintiff."); LaSalle v. Comm'r of Soc. Sec., No. 10-cv-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011) (citing Nieves v. Astrue, No. 08-cv-5178, 2010 WL 629831, at *24 (E.D. Pa. Feb. 19, 2010);

19

Steininger v. Barnhart, No. 04-cv-5383, 2005 WL 2077375, at *13 (E.D. Pa. Aug. 24, 2005)). ("Because [the plaintiff's] case will be remanded for the ALJ's failure to consider and analyze all relevant medical evidence regarding her mental impairments, including her low GAF scores, it is unnecessary to examine [the plaintiff's] additional claims. A remand may produce different results on these claims, making discussion of them moot."). Because the Court concludes that remand is appropriate on the basis of the ALJ's assignment of weight to the treating physician evidence, it declines to address the other issues raised in Plaintiff's objections because the remand may yield results that render those issues moot. The Court also concludes that, accordingly, further consideration and reevaluation of such claimed errors are warranted upon remand.